ORIGINAL

# In the United States Court of Federal Claims

No. 17-1082C
December 6, 2017

FILED
DEC - 6 2017
U.S. COURT OF FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * *

ANDREW U. D. STRAW,

Plaintiff,

v.

UNITED STATES,

Defendant.

* * * * * * * * * * * * * * * * * * * *

**Motion to Dismiss; In Forma Pauperis; Judicial Takings; Americans with Disability Act; 28 U.S.C. § 1500**

**Andrew U. D. Straw**, Schaumburg, IL, pro se.

**John Sinclair Groat**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Douglas K. Mickle**, Assistant Director, Commercial Litigation Branch, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Civil Division, and **Chad A. Readler**, Acting Assistant Attorney General.

## OPINION

HORN, J.

On August 9, 2017, pro se plaintiff Andrew U. D. Straw, according to his description, "a disabled lawyer," filed a complaint with this court in the above-captioned case. Plaintiff separately filed an Application to Proceed In Forma Pauperis that same day.

In his complaint, plaintiff seeks $3,000,000.00 in compensatory damages from the United States "due to the Fifth Amendment Private Personal Property Taking of 3 federal law licenses as part of a conspiracy to deprive me of rights I have under the ADA [Americans with Disabilities Act of 1990], Titles II and V . . . ." (emphasis in original). According to plaintiff, the alleged conspiracy stems from events which occurred during plaintiff's employment with the Indiana Supreme Court. According to the complaint, in 2001, plaintiff allegedly broke his pelvis and both of his legs driving to the Indiana Supreme Court for work. Plaintiff further alleges that the Indiana Supreme Court has continually discriminated against him since 2001 and, that in an attempt to make plaintiff quit his job, "took away" plaintiff's "handicap parking close [sic] to the office, an

7017 1450 0000 1346 0607

accommodation [plaintiff] needed after [his] car accident." In 2014, plaintiff states that he complained to the "ADA Coordinator of the Indiana Supreme Court," who, according to plaintiff, "immediately retaliated" against plaintiff, "attacking" plaintiff's disabilities, "disability work, and even [plaintiff's] work helping Ukrainian refugees from the war with Russia." According to plaintiff, the "disciplinary process then lasted 27 months and I ended up with a suspended license for having filed 4 disability rights cases." Plaintiff states that the Indiana Supreme Court suspended his Indiana "law license" for 180 days without automatic reinstatement on February 14, 2017. See Matter of Straw, 68 N.E.3d 1070, 1073 (Ind.) ("For Respondent's [Mr. Straw's] professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than 180 days, without automatic reinstatement, effective immediately.") (emphasis omitted), cert. denied sub nom. Straw v. Ind. Supreme Court, 137 S. Ct. 2309 (2017). Plaintiff states he is separately "suing the Indiana Supreme Court in federal court for relief and damages" and has filed complaints with "local, state, and federal civil rights agencies and offices for various aspects of the damage to me from the Indiana Supreme Court and its retaliation and discrimination."

Following the Indiana Supreme Court's suspension of plaintiff from the practice of law in state court in Indiana for 180 days without automatic reinstatement, plaintiff alleges the United States District Court for the Northern District of Indiana, the United States District Court for the Southern District of Indiana, and the United States District Court for the Northern District of Illinois "simply followed the Indiana Supreme Court down the path of suspending me" and "illegally punishing me in 'comity' with the Indiana Supreme Court." See In the Matter of: Andrew U.D. Straw, No. 1:17-mc-13-TWP-DKL, (S.D. Ind. Mar. 16, 2017) (suspending Mr. Straw from the practice of law before the court), appeal docketed, Andrew U.D. Straw v. United States District Court, No. 17-2523, (7th Cir. July 26, 2017);[1] In the Matter of: Andrew U.D. Straw, No. 1:17-MC-5-TLS, (N.D. Ind. Mar. 21, 2017) (suspending Mr. Straw from the practice of law before the court); In the Matter of Andrew U.D. Straw, An Attorney, No. 17-D-02, (N.D. Ill. Mar. 17, 2017) (suspending Mr. Straw from the practice of law before the court). Plaintiff contends the three United States District Courts, which all invited plaintiff to submit documents indicating why reciprocal discipline would be unwarranted, did not provide him with proper hearings and "ignore[d]" plaintiff's reasons as to why suspension should not be imposed. Moreover, plaintiff insists the District Courts' actions violated the Takings Clause of the Fifth Amendment by depriving plaintiff of his property rights in his "law licenses." Plaintiff asserts this court has jurisdiction over his takings claims pursuant to 28 U.S.C. § 1491(a)(1). Additionally, plaintiff contends that "under 42 U.S.C. § 12203 and 28 C.F.R. § 35.134 . . . retaliation against ADA cases is illegal and no person may do so under any circumstances, including

[1] Plaintiff has filed numerous additional documents in this court in addition to those required by the Rules of the United States Court of Federal Claims, including a document titled "AFFIDAVIT OF ANDREW U. D. STRAW" on September 18, 2017. This document appears to detail plaintiff's experience when appealing what plaintiff terms "an incorrect decision to the 7th Circuit" in Straw v. Indiana Supreme Court. See Straw v. Indiana Supreme Court, 692 F. App'x 291 (7th Cir. 2017).

any federal judge who is administering the law licensing in a district court." Plaintiff alleges this court has jurisdiction over his ADA retaliation claims under 28 U.S.C. § 1491(a)(2).

On October 10, 2017, defendant filed a motion to dismiss plaintiff's complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) (2017) of the Rules of the United States Court of Federal Claims (RCFC), or, in the alternative, for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). Defendant argues plaintiff "has no constitutionally protected property interest in his admission to practice before any United States district courts" because "[a]dmission to practice before courts is not a transferrable property right subject to compensation pursuant [sic] the Takings Clause" and, also, that Mr. Straw's contention that his suspensions were unwarranted defeats his takings claims because a taking can only occur when the underlying governmental action is valid. Defendant also asserts that this court lacks jurisdiction to review the merits of a District Court decision. Additionally, defendant contends 28 U.S.C. § 1500 "bars this action because Mr. Straw claim [sic] that he was improper [sic] suspended" was pending on appeal when this action was filed.

Plaintiff filed a response to the defendant's motion to dismiss, in which he states that he learned on October 10, 2017, that his Western District of Wisconsin license was suspended, and that he will "seek amendment to add this claim for another $1,000,000, like the others" if his complaint is not dismissed. In response to defendant's argument that this court lacks subject matter jurisdiction over plaintiff's complaint, plaintiff maintains that "the property interest in my law licenses is created through substantive due process because federal law creates these very valuable licenses" and declares "[j]udicial takings are covered by the Fifth Amendment." Plaintiff also asserts that a "that a law license is a fundamental right under the Privileges and Immunities Clause" and that "[i]nfringing that right must be compensated as a Takings."[2]

As of the date of this opinion, the court has received and reviewed a continuous stream of additional filings from Mr. Straw. These additional filings include a motion for entry of a default judgment by the Clerk of the Court.[3] Mr. Straw's other filings appear to

---

[2] In his response, plaintiff states that he incorporates "by reference all exhibits and affidavits in the record, including my MOTION FOR SUMMARY JUDGMENT . . . ."

[3] In the motion for default judgment, among other allegations, plaintiff argues defendant was in default because the docket set a deadline of October 9, 2017, for defendant to file an answer to plaintiff's complaint. In fact, plaintiff's motion to dismiss was filed instead of an answer in accordance with RCFC 12. Moreover, pursuant to RCFC 12(a), defendant had sixty days to file an answer to plaintiff's complaint. If the period in which a party must a file a document ends on a Saturday, Sunday, or legal holiday, the filing period continues to run until the same time on the next day. RCFC 6(2)(C). Columbus Day, which was observed on October 9, 2017, is considered a legal holiday. <u>See</u> RCFC 6(6)(A). Thus, defendant's answer to plaintiff's complaint was not due until October 10, 2017, and defendant was not in default because it timely filed its motion to dismiss instead of an answer in accordance with RCFC 12 on October 10, 2017.

be largely duplicative of statements and allegations raised in plaintiff's earlier response to defendant's motion to dismiss. Overall, they add little, additional, relevant information to assist the court, although the court has reviewed each of the filings.

**DISCUSSION**

The court recognizes that plaintiff is technically proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)). Although Mr. Straw's filings were filed pro se, the court notes that the above-captioned plaintiff, by his own description, was trained as an attorney.

In the above-captioned case, plaintiff has filed an Application to Proceed In Forma Pauperis. In general, to provide access to this court to those who cannot pay the filing fees mandated by Rule 77.1(c) of the RCFC, 28 U.S.C. § 1915 (2012) permits a court to allow a plaintiff to file a complaint without payment of fees or security, under specific circumstances. Section 1915(a)(1) states that:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security

> therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner[4] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Therefore, the statute at 28 U.S.C. § 1915(a)(1) requires a person to submit an affidavit with a statement of all the applicant's assets, and that the affidavit state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress. See id.

When enacting the in forma pauperis statute, 28 U.S.C. § 1915, Congress recognized that "'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)); see also McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007). Accordingly, Congress included subsection (e) in the in forma pauperis statute, which allows courts to dismiss lawsuits determined to be "frivolous or malicious." 28 U.S.C. § 1915(e). The United States Supreme Court has found that "a court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless' . . . a category encompassing allegations that are 'fanciful' . . . 'fantastic' . . . and 'delusional . . . .'" Denton v. Hernandez, 504 U.S. at 32-33 (internal citations omitted); see also McCullough v. United States, 76 Fed. Cl. at 3;

---

[4] A number of courts have reviewed the words of 28 U.S.C. § 1915(a)(1), regarding in forma pauperis applications by non-prisoner litigants in federal courts, and have concluded that Congress did not intend for non-prisoners to be barred from being able to proceed in forma pauperis in federal court. See, e.g., Floyd v. United States Postal Serv., 105 F.3d 274, 275-76 (6th Cir.), reh'g denied (6th Cir. 1997); Schagene v. United States, 37 Fed. Cl. 661, 663 (1997), appeal dismissed, 152 F.3d 947 (Fed. Cir. 1998); see also In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997) (discussing how to administer in forma pauperis rights to a non-prisoner, thereby acknowledging the rights of non-prisoners to apply for in forma pauperis status); Leonard v. Lacy, 88 F.3d 181, 183 (2d Cir. 1996) (using "sic" following the word "prisoner" in 28 U.S.C. § 1915(a)(1) seemingly to indicate that the use of that word was too narrow); Smith v. United States, 113 Fed. Cl. 241, 243 (2013); Powell v. Hoover, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (holding that a "fair reading of the entire section [28 U.S.C. § 1915(a)(1)] is that it is not limited to prisoner suits."). Moreover, 28 U.S.C. § 1915(a)(1) refers to both "person" and "prisoner." The word "person" is used three times in the subsection, while the word "prisoner" is used only once. This court, therefore, finds that the single use of the word "prisoner" in the language of 28 U.S.C. § 1915(a)(1) was not intended to eliminate a non-prisoner from proceeding in federal court in forma pauperis, provided that the civil litigant can demonstrate appropriate need. Any other interpretation is inconsistent with the statutory scheme of 28 U.S.C. § 1915.

Schagene v. United States, 37 Fed. Cl. at 663. Courts, however, should exercise caution in dismissing a case under section 1915(e) because a claim that the court perceives as likely to be unsuccessful is not necessarily frivolous. See Denton v. Hernandez, 504 U.S. at 33. As stated by the United States Supreme Court, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Id.

The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Roberson v. United States, 115 Fed. Cl. 234, 239, appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). This court and its predecessors were established to make available a user friendly forum in which plaintiffs can submit their legitimate claims against the sovereign, limited only by the legislative decision to waive sovereign immunity as to the types of claims allowed. In fact, prominently posted at the entrance to this courthouse are the words of Abraham Lincoln: "It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals."

Interpreting an earlier version of the in forma pauperis statute, the United States Supreme Court offered the following guidance:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one.

Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948) (omissions in original).

In Fiebelkorn v. United States, for example, a Judge of the United States Court of Federal Claims indicated that:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be 'unable to pay such fees.' 28 U.S.C. § 1915(a)(1). To be 'unable to pay such fees' means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Fuentes v. United States, 100 Fed. Cl. at 92; Hayes v. United States, 71 Fed. Cl. 366, 369 (2006).

In his Application to Proceed In Forma Pauperis, pro se plaintiff Mr. Straw indicates that he receives an unspecified amount of income from Social Security Disability Insurance, has minimal savings, and has been unemployed since 2008. Plaintiff's application also lists $350.00 from "[r]efugee clients from Ukraine" and $20,500.00 from "settlements for disability discrimination" as his other sources of income within the last twelve months. Plaintiff's application further provides that he has monthly expenses of approximately $1,087.00, as well as approximately $52,000.00 in student loan debt and approximately $30,000.00 in credit card and legal debts. Although plaintiff's income and amount of outstanding debt might qualify him to proceed in forma pauperis, as discussed below, his application is moot because his complaint is being dismissed.

Additionally, the court notes that plaintiff is a frequent filer of complaints in federal courts. Plaintiff has filed multiple complaints or appeals that were dismissed as frivolous or for failure to state a claim. The statute at 28 U.S.C. § 1915(g), titled the Prison Litigation Reform Act, was enacted with respect to prisoner plaintiffs to discourage frivolous lawsuits and denies in forma pauperis status to repetitive prisoner complainants. It states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); see also McLean v. United States, 566 F.3d 391, 394 (4th Cir. 2009); Pettus v. Morgenthau, 554 F.3d 293, 296 (2d Cir. 2009); Warren v. United States, 106 Fed. Cl. 507, 509-10 (2012); Dudley v. United States, 61 Fed. Cl. 685, 686 (2004). Since 2014, Mr. Straw has filed at least twenty-one complaints and twelve appeals on his own behalf. Of those filings, in federal courts at least four have been dismissed as frivolous. See Straw v. Kloecker, 576 F. App'x 607, 609 (7th Cir. 2014) ("We agree with the district court [for the Northern District of Illinois] that Straw's lawsuit under RICO is frivolous, as is this appeal. Accordingly, we AFFIRM the judgment and order Straw to SHOW CAUSE within 30 days why he should not be sanctioned under [Federal Rules of

Appellate Procedure] 38 for taking this appeal.") (emphasis added); Straw v. Ind. Attorney General, No. 1:17-cv-03975-WTL-TAB, (S.D. Ind. Nov. 6, 2017) (order dismissing plaintiff's complaint as "frivolous," noting that Mr. Straw "is developing a pattern of filing frivolous litigation," and warning Mr. Straw that he could be subject to sanctions if he continued to file further frivolous litigation) (emphasis added), appeal docketed, Straw v. Ind. Attorney General, No. 17-3357 (7th Cir. Nov. 14, 2017); Straw v. Ind. Attorney General, No. 1:17-cv-03975-WTL-TAB, (S.D. Ind. Dec. 4, 2017) (District Court, however, denied Mr. Straw's request to proceed on appeal in forma pauperis because Mr. Straw was pursuing his appeal "in bad faith") (internal quotation marks and citation omitted); Straw v. Court, No. 1:15-CV-01015-RLY-DKL, 2016 WL 344720, at *5-8 (S.D. Ind. Jan. 28, 2016) (dismissing the case because Mr. Straw failed to state a claim under Title I and Title V of the ADA and failed to state a deprivation of due process in violation of the Fifth Amendment); Straw v. Sconiers, No. 3:14-CV-1772-JD, 2014 WL 7404065, at *1 (N.D. Ind. Dec. 30, 2014) ("Because Straw's claims are utterly frivolous, the Court dismisses the claims for lack of subject matter jurisdiction consistent with Rule 12(b)(1). And even if Straw had established jurisdiction, the motions would be granted on the ground that Straw has failed to state a claim upon which relief can be granted consistent with Rule 12(b)(6).") (emphasis added); Straw v. Kloecker, No. 14-C-1420, 2014 WL 883289, at *2 (N.D. Ill. Mar. 5, 2014) (denying Mr. Straw's application to proceed in forma pauperis and dismissing the action because Mr. Straw's complaint was "legally frivolous") (emphasis added), aff'd, 576 F. App'x 607 (7th Cir. 2014). Additionally, at least two federal judges have dismissed complaints filed by Mr. Straw for reasons other than failure to state a claim, and, in doing so, noted that Mr. Straw also had failed to state a claim. Straw v. Dixon, No. 3:16-CV-276, 2016 WL 4014976, at *4 (N.D. Ind. July 27, 2016) ("Even if Plaintiff had properly alleged that diversity jurisdiction exists, he has failed to state a claim for abuse of process."); Straw v. Am. Bar Ass'n, No. 14-C-5194, 2015 WL 602836, at *6 (N.D. Ill. Feb. 11, 2015) ("Alternatively, even if Straw had standing to bring his claim (which he does not), he has failed to state a claim under the ADA.").

With respect to the case currently before this court, plaintiff's complaint also fails to establish a cognizable cause of action within the jurisdiction of this court and fails to state a claim. The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee

Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2016); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to

plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Plaintiff's current complaint filed in this court alleges that he suffered Constitutional, Fifth Amendment takings of his three "federal law licenses" in the United States District Court for the Northern District of Indiana, the United States District Court for the Southern District of Indiana, and the United States District Court for the Northern District of Illinois. To succeed under the Fifth Amendment Takings Clause, a plaintiff must show that the government took a private property interest for public use without just compensation. See Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010); Gahagan v. United States, 72 Fed. Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377-78 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008). The government must be operating in its sovereign rather than in its proprietary capacity when it initiates a taking. See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008). The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)), reh'g denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings. Then, the court must determine whether the government action is a "'compensable taking of that property interest.'" Huntleigh USA Corp v. United States, 525 F.3d at 1377 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372).

Among its arguments, defendant urges this court to dismiss plaintiff's complaint for failure to state a claim because plaintiff does not have a cognizable property interest in his admission to practice law before any of the three District Courts. Plaintiff, however, argues that "[p]ersonal property is covered [by the Takings Clause of the Fifth Amendment] and this Court has jurisdiction over Takings Clause cases." Plaintiff asserts in his response to defendant's motion to dismiss that his "property interest in [his] law licenses is created through substantive due process" and that "a law license is a fundamental right under the Privileges and Immunities Clause of the U.S. Constitution." Plaintiff also insists in his response that "[a]s a disabled person, I am a member of a ***discrete and insular minority*** and my rights are subject to heightened scrutiny." (emphasis in original).

Mr. Straw appears to be alleging a judicial takings by the three identified United States District Courts. There exist varied treatments of judicial takings claims by different

courts. Some courts, including the United States Court of Appeals for the Federal Circuit, the binding Circuit Court for this court, have determined that judicial takings can exist, although without concluding that a judicial taking actually occurred. See Smith v. United States, 709 F.3d at 1116 ("In that case [Stop the Beach], the Court recognized that a takings claim can be based on the action of a court."); see also Vandevere v. Lloyd, 644 F.3d 957, 964 n.4 (9th Cir.) ("[A]ny branch of state government could, in theory, effect a taking." (citing Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 713-15 (plurality opinion))), cert. denied, 132 S. Ct. 850 (2011). Although it is theoretically possible for a court to effect a fundamental taking, however, the United States Court of Appeals for the Federal Circuit also has indicated that the United States Court of Federal Claims lacks jurisdiction over judicial takings claims that require the court to scrutinize the decisions of other tribunals for the same plaintiff given the same set of facts.[5] See also Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court."); Innovair Aviation Ltd. v. United States, 632 F.3d 1336, 1344 (Fed. Cir.) ("[T]he Court of Federal Claims does not have jurisdiction to review the decision of district courts and cannot entertain a taking[s] claim that requires the court to scrutinize the actions of another tribunal." (internal quotation marks omitted; brackets in original)), reh'g en banc denied, (Fed. Cir. 2011), cert. denied, 132 S. Ct. 999 (2012); Vereda Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the court to scrutinize the actions of another tribunal." (internal quotation marks omitted)); Allustiarte v. United States, 256 F.3d 1349, 1352 (Fed. Cir.) ("'[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts.'" (quoting Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994))), cert. denied, 534 U.S. 1042 (2001); see also Potter v. United States, 121 Fed. Cl. 168, 169 (2015); Martl v. United States,[6] No. 09-299, 2010 WL 369212, at *2 (Fed. Cl.

---

[5] In a non-presidential opinion, the Federal Circuit indicated that "[t]he appellant [Barth] asked the Court of Federal Claims to scrutinize the actions of coordinate federal courts to determine whether their actions effected a taking of his property. That was beyond the Court of Federal Claims' jurisdiction." Barth v. United States, 76 F. App'x 944, 945-46 (Fed. Cir.), cert. denied, 540 U.S. 1049 (2003) (footnote omitted).

[6] The Martl case is related to a recent decision of the undersigned, Milgroom v. United States, 122 Fed. Cl. 779 (2015), aff'd, 651 F. App'x 1001 (Fed. Cir. 2016) (per curiam), involving the same underlying facts as the Martl case. In the Milgroom case, this court determined:

> This court is without jurisdiction to review the alleged taking by the District Court, a judicial taking, see Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection, 560 U.S. 702 (2010), because review in this case of such a taking "would require the Court of Federal Claims to scrutinize the merits of the district court's judgment, a task it is without authority to undertake." Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015); see also Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction

Jan. 29, 2010) (unpublished) ("[T]his court has no jurisdiction over takings claims that are founded on a challenge to the judgment of another federal court.").

Therefore, to determine whether jurisdiction exists in the above captioned case, this court must ascertain whether or not plaintiff's judicial takings claims require the court to reevaluate the decisions of the United States District Court for the Northern District of Indiana, the United States District Court for the Southern District of Indiana, and the United States District Court for the Northern District of Illinois, including whether the case filed in the United States Court of Federal Claims involves the same plaintiff and the same set of facts as was analyzed in those District Court cases. Although his complaint alleges that a taking occurred when the District Courts each suspended plaintiff from the practice of law for 180 days, in his response to defendant's motion to dismiss, plaintiff argues "[n]o examination of the district court decisions is being requested, only verification that my licenses were suspended and providing the monetary takings I asked. Not one jot of these other courts' decisions is being asked to be changed here. I just want compensation."

Following the Indiana Supreme Court's 180 day suspension of Mr. Straw's license to practice law in Indiana, the United States District Court for the Southern District of Indiana issued an order to Mr. Straw to show cause "why reciprocal discipline should not be imposed in accordance with *Rule II* of the *Local Rules of Disciplinary Enforcement*" of the court. In the Matter of: Andrew U.D. Straw, No. 1:17-mc-13-TWP-DKL, (S.D. Ind. March 16, 2017), appeal docketed, Andrew U.D. Straw v. United States District Court, No. 17-2523 (7th Cir. July 26, 2017). The United States District Court for the Southern District of Indiana found that Mr. Straw's submission to the court failed to "provide a sufficient bases [sic] to overcome reciprocal suspension in this court" and suspended Mr. Straw for 180 days without automatic reinstatement. Id. Similarly, the United States District Court for the Northern District of Indiana imposed reciprocal discipline "pursuant to N.D. Ind. L. R. 83-6.8(c)." In the Matter of: Andrew U.D. Straw, No. 1:17-MC-5-TLS, (N.D. Ind. Mar. 21, 2017). The United States District Court for the Northern District of Indiana also reviewed Mr. Straw's submission to the court and found that Mr. Straw's

---

to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts."). Just as the Court of Federal Claims does not have jurisdiction to review the decisions of the United States District Courts, the Court of Federal Claims also does not have jurisdiction to review decisions of the United States Bankruptcy Courts. See Allustiarte v. United States, 256 F.3d 1349, 1351 (Fed. Cir. 2001) (holding that the Court of Federal Claims does not have jurisdiction to entertain judicial takings claims against federal bankruptcy courts because "[s]uch a determination would require the court to scrutinize the actions of the bankruptcy trustees and courts"), cert. denied, 534 U.S. 1042 (2001); Mora v. United States, 118 Fed. Cl. 713, 716 (2014) ("[T]his court does not have jurisdiction to review the decisions of state courts, federal bankruptcy courts, federal district courts, or federal circuit courts of appeals.").

Milgroom v. United States, 122 Fed. Cl. at 801-02.

submission was not sufficient to avoid reciprocal discipline. Id. The United States District Court for the Northern District of Indiana suspended Mr. Straw for 180 days without automatic reinstatement and noted that Mr. Straw's submissions "only highlight that the suspension is appropriate, as [Mr. Straw] is either unwilling or incapable of accepting that his claims did not have 'a basis in law and fact . . . that is not frivolous . . . .'" Id. (citation omitted). Additionally, in the United States District Court for the Northern District of Illinois, the court determined that Mr. Straw's submission to the court requesting that the court not impose discipline identical to that imposed by the Indiana Supreme Court did not satisfy any of "the grounds set forth in Local Rule 83.26(e)" and suspended Mr. Straw for 180 days without automatic reinstatement. In the Matter of Andrew U.D. Straw, An Attorney, No. 17-D-02, (N.D. Ill. March 17, 2017). Each of these United States District Courts interpreted their own local rules and decided to impose reciprocal discipline and suspend plaintiff's admission to practice before their particular court. This court, therefore, lacks jurisdiction over plaintiff's judicial takings claims because this court should not review whether the three United States District Courts properly interpreted their own local rules when deciding whether to suspend plaintiff.[7]

Plaintiff's own submissions to this court contradict his assertion that when alleging a conspiracy and a taking by each of the District Courts to deprive him of his right to practice law in those District Courts, he is not challenging the propriety of the District Courts' decisions. Plaintiff's argument in his reply to defendant's motion to dismiss, which states "[n]o examination of the district court decisions is being requested, only verification that my licenses were suspended . . . . I just want compensation," resembles the plaintiffs' argument in Allustiarte v. United States. In Allustiarte v. United States, the plaintiffs unsuccessfully claimed they were "not asking the Court of Federal Claims to review" the Bankruptcy Court's judgments, but were only seeking to obtain just compensation for the takings. Allustiarte v. United States, 256 F.3d at 1351; see also Shinnecock Indian Nation v. United States, 782 F.2d at 1353 ("The Court of Federal Claims, however, is without authority to adjudicate the Nation's claim that it suffered a compensable taking at the hands of the district court."); and the undersigned's decision in Petro-Hunt, L.L.C. v. United States, 126 Fed. Cl. 367, 384 (2016) (observing that plaintiff's argument that the United States Court of Appeals for the Fifth Circuit incorrectly interpreted and applied case law precedent undercut plaintiff's assertion that he was not challenging the court's decision), aff'd, 862 F.3d 1370 (Fed. Cir. 2017). Plaintiff is, in fact, seeking to have this court review the same factual issues that were before the United States District Court for the Northern District of Indiana, the United States District Court for the Southern District of Indiana, and the United States District Court for the Northern District of Illinois, which this court cannot do.

---

[7] On May 19, 2017, the Virginia State Bar Disciplinary Board also convened a hearing to determine whether the Board should impose the same discipline on plaintiff as imposed by the Indiana Supreme Court. After holding a hearing in which plaintiff appeared telephonically, the Board found "that the conduct resulting in the Respondent's suspension in Indiana is not conduct that would be grounds for disciplinary action in Virginia." The Virginia Board elected not to impose reciprocal discipline on plaintiff.

Moreover, this court does not have jurisdiction over plaintiff's takings claims because the United States Court of Federal Claims may only exercise jurisdiction under the Fifth Amendment when the claimant "concede[s] the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act . . . ." Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802-03 (Fed. Cir. 1993); see also Mahoney v. United States, 129 Fed. Cl. 589, 592-93 (2016); Lea v. United States, 120 Fed. Cl. 440, 445 (2015). In this case, the initial disciplinary action was taken by Indiana's highest state court, and Mr. Straw has not conceded the validity of the three District Courts' actions which imposed reciprocal discipline. In sum, plaintiff has not alleged any valid takings claims over which this court has jurisdiction.

Plaintiff further asserts 28 U.S.C. § 1491 provides this court with jurisdiction over his "ADA retaliation claims" against the three federal District Courts which issued orders suspending plaintiff's admissions to practice law. This court, however, lacks subject matter jurisdiction over plaintiff's ADA retaliation claims for several reasons. First, as discussed above, to demonstrate that the Tucker Act provides jurisdiction over claims where a contract between the claimant and government did not exist and no payment has been made to the government, the claimant must prove that the particular provision of law relied upon is money-mandating. See, e.g., United States v. Navajo Nation, 556 U.S. at 290; Ontario Power Generation, Inc. v. United States, 369 F.3d at 1301. The ADA, however, is not a money-mandating law. See Dziekonski v. United States, 120 Fed. Cl. 806, 809-10 (2015) (noting that the ADA is not a money-mandating provision that would provide the COFC with jurisdiction) (citation omitted); Shipman v. United States, 118 Fed. Cl. 701, 707 (2014) ("[T]he court does not have subject matter jurisdiction over claims alleging a violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* because the ADA is not a money-mandating source of law.") (internal quotation marks and citation omitted). Moreover, the United States District Courts possess exclusive jurisdiction over ADA claims. See, e.g., McCauley v. United States, 38 Fed. Cl. 250, 266 (1997) (citing 42 U.S.C. § 12117(a)) (finding the district courts had exclusive jurisdiction over claims brought under the ADA), aff'd, 152 F.3d 948 (Fed. Cir. 1998). Thus, this court is not the proper forum to seek judicial relief under the ADA. Id.; see Johnson v. United States, 97 Fed. Cl. 560, 564 (2011) ("The Court notes that Federal district courts have exclusive jurisdiction over the ADA and Rehabilitation Act claims."); Searles v. United States, 88 Fed. Cl. 801, 805 (2009) ("Indeed, the ADA does not apply to the federal government as an employer and district courts hold exclusive jurisdiction over ADA claims.").

Plaintiff also asserts that this court has jurisdiction under Title II of the ADA arising under 28 C.F.R. § 35.134. Under 28 C.F.R. § 35.134(a), no "private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part." The section of 28 C.F.R. § 35.134(b) provides:

> No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her

> having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

"Private or public entity" has been defined as any state or local government, any instrumentality of a state or local government, or the National Railroad Passenger Corporation. 28 C.F.R. § 35.104. The ADA does not apply to the United States District Court for the Northern District of Indiana, the United States District Court for the Southern District of Indiana, and the United States District Court for the Northern District of Illinois because those federal courts are not state or local governments or instrumentalities of such as defined by 28 C.F.R. § 35.104. See Cellular Phone Taskforce v. F.C.C., 217 F.3d 72, 73 (2d Cir. 2000) (per curiam) ("Title II of the ADA is not applicable to the federal government."), cert. denied, 531 U.S. 1070 (2001); Pierce v. United States, 117 Fed. Cl. 798, 801 (2014) (stating that neither the United States Tax Court nor the United States District Court for the Eastern District of California were a "public entity" for purposes of the ADA) (citing United States v. Wishart, 146 F. App'x 171 (9th Cir. 2005)), aff'd, 590 F. App'x 1000 (Fed. Cir. 2015); Gray v. United States, 69 Fed. Cl. 95, 101 n.5 (2005)); Agee v. United States, 72 Fed. Cl. 284, 289 (2006) (concluding that the COFC does not have jurisdiction over claims arising under Title II of the ADA).

Finally, regardless, defendant asserts plaintiff's claims against the United States would be barred by 28 U.S.C. § 1500, which provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

The application of section 1500 turns on whether a plaintiff, at the time suit was filed in the Court of Federal Claims, had a suit pending in another federal court against the United States or a person acting under authority of the United States, based on substantially the same operative facts as the suit filed in this court, regardless of the relief sought. See United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011). "The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994) (discussing the United States Supreme Court's opinion in Keene Corp. v. United States, 508 U.S. 200 (1993)). Indeed, "'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" Keene Corp. v. United States, 508 U.S. at 207 (quoting Mollan v. Torrance, 22 U.S. 537, 539 (1824) (Marshall, C.J.) (other citations omitted) (noting that the Court of Federal Claims correctly applied section 1500 by "looking to the facts existing when Keene filed each of its complaints"). When a District Court has entered judgment dismissing a case, the United States Court of Appeals for the Federal Circuit has established that once "a notice of appeal is filed,"

then the case is "pending" under 28 U.S.C. § 1500. Brandt v. United States, 710 F.3d 1369, 1380 (Fed. Cir. 2013).

The United States Supreme Court offered some clarification regarding the effect of 28 U.S.C. § 1500 in Tohono O'Odham Nation. In the words of the United States Supreme Court, section 1500 "bars jurisdiction in the CFC [Court of Federal Claims] not only if the plaintiff sues on an identical claim elsewhere – a suit 'for' the same claim – but also if the plaintiff's other action is related although not identical – a suit 'in respect to' the same claim." United States v. Tohono O'Odham Nation, 563 U.S. at 312. The Supreme Court explained, "two suits are for or in respect to the same claim when they are based on substantially the same operative facts." Id. at 318 (citing Keene Corp. v. United States, 508 U.S. 200, 206 (1993)).

There is, however, no set test to determine when, according to the Supreme Court, "two suits have sufficient factual overlap to trigger the jurisdictional bar." United States v. Tohono O'Odham Nation, 563 U.S. at 318. Although the assessment must be on a case by case factual basis, the Tohono O'Odham Nation case provides a general framework for consideration. In its decision, the Supreme Court stated in Tohono O'Odham Nation:

> The remaining question is whether the Nation's two suits have sufficient factual overlap to trigger the jurisdictional bar. The CFC [United States Court of Federal Claims] dismissed the action here in part because it concluded that the facts in the Nation's two suits were, "for all practical purposes, identical." 79 Fed. Cl. 645, 656 (2007). It was correct to do so. The two actions both allege that the United States holds the same assets in trust for the Nation's benefit. They describe almost identical breaches of fiduciary duty – that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect. Under § 1500, the substantial overlap in operative facts between the Nation's District Court and CFC suits precludes jurisdiction in the CFC.

Id. at 317.

Plaintiff appealed the United States District Court for the Southern District of Indiana's order suspending plaintiff's admission to the court for 180 days to the United States Court of Appeals for the Seventh Circuit on July 26, 2017, which was two weeks before plaintiff filed his complaint with this court.[8] See Andrew U.D. Straw v. United States

[8] It appears that Mr. Straw has not appealed the decision by the United States District Court for the Northern District of Indiana in In the Matter of: Andrew U.D. Straw, No. 1:17-MC-5-TLS, (N.D. Ind. Mar. 21, 2017), or the decision by the United States District Court for the Northern District of Illinois in In the Matter of Andrew U.D. Straw, An Attorney, No. 17-D-02, (N.D. Ill. Mar. 17, 2017).

District Court, No. 17-2523 (7th Cir. July 26, 2017). In the docketing statement in the Circuit Court, Mr. Straw sought review of whether "the Southern District of Indiana has the authority to impose discipline based on cases in other districts" and whether Mr. Straw has "an absolute right not to experience any discrimination or retaliation for filing any disability rights complaint or lawsuit under 42 U.S.C. § 12203, 28 C.F.R. § 35.134, and explained in the technical assistance manual at http://www.ada.gov/reg2.htm." Id. Upon review, it is apparent that the initial case in United States District Court for the Southern District of Indiana and the appeal, which, clearly, was pending when plaintiff filed his complaint in this court, arise from substantially the same operative facts, which revolve around whether Mr. Straw's suspension by the Indiana Supreme Court and the United States District Court for the Southern District of Indiana were proper. Therefore, his claims filed in this court are barred 28 U.S.C. § 1500. See United States v. Tohono O'Odham Nation, 563 U.S. at 317; see also Trusted Integration, Inc. v. United States, 659 F.3d at 1165 (finding that 28 U.S.C. § 1500 barred two of the plaintiff's three claims when the plaintiff, at the time it filed suit in the United States Court of Federal Claims, had a complaint pending in a District Court that involved "nearly identical conduct").

Finally, this court lacks jurisdiction over plaintiff's allegations that the District Courts' decisions violated the Due Process Clause of the Fifth Amendment. The Due Process Clause "does not 'mandate money damages by the Government.'" Chittenden v. United States, 126 Fed. Cl. 251, 260 (2016) (quoting Smith v. United States, 36 F. App'x. 444, 446 (Fed. Cir.) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)), reh'g denied (Fed. Cir.), cert. denied, 537 U.S. 1010 (2002)), aff'd, 663 F. App'x 934 (Fed. Cir. 2016); see also Golden v. United States, 118 Fed. Cl. 764, 768 (2014) (finding the court lacked jurisdiction over plaintiff's claim that the United States Supreme Court violated plaintiff's due process rights by disbarring plaintiff without providing notice to plaintiff). Also to the extent plaintiff argues the District Courts' decisions violated the Privilege and Immunities Clause of Article IV of the United States Constitution, this court likewise finds that it lacks jurisdiction over such a claim because the Privileges and Immunities Clause does not mandate payment of money by the federal government. See Howell v. United States, 127 Fed. Cl. 775, 790 (2016); Ivaldy v. United States, 123 Fed. Cl. 633, 637 (2015), aff'd, 655 F. App'x 813, 815 (Fed. Cir. 2016) (citations omitted). Additionally, this court lacks jurisdiction over claims arising under the Equal Protection Clause of the Fifth Amendment. See Joshua v. United States, 17 F.3d at 379; Stephenson v. United States, 58 Fed. Cl. 186, 193 (2003). In deciding whether an applicant is qualified to practice law before a state court, such as Indiana, and, more particularly, the three federal District Courts addressed in plaintiff's complaint, each such court must make an individualized determination as to whether the applicant has satisfied the established state or federal criteria for admission and continued practice. Each federal court establishes its own criteria to establish when reciprocal suspension or disbarment is appropriate. See LCrR. 83.11; N.D. Ind. R. 83-5; S.D. Ind. R. 83-5. Plaintiff does not have a constitutionally protected property interest in his admissions before a court. See Conti v. United States, 291 F.3d 1334, 1342 (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003).

## CONCLUSION

For the foregoing reasons, the court lacks jurisdiction to adjudicate any of plaintiff's claims. Accordingly, the court **GRANTS** defendant's motion to dismiss. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**